UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PARFITT WAY MANAGEMENT CORP.
d/b/a HARBOUR PUBLIC HOUSE,

                         Plaintiff,

v.                                                    8:17-CV-0299
                                                      (GTS/CFH)
GSM BY NOMAD, LLC d/b/a NOMAD
AIRSTREAM; GUILLAUME LANGEVIN;
and STEVE CLEMENT,

                         Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

BRIGGS NORFOLK, LLP                           MATTHEW D. NORFOLK, ESQ.
  Counsel for Plaintiff
2296 Saranac Avenue
Lake Placid, NY 12946

THE WAGONER FIRM, PLLC                        MATTHEW D. WAGONER, ESQ.
  Counsel for Defendants                      MATTHEW A. TOPOROWSKI, ESQ.
8 Thurlow Terrace
Albany, NY 12203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this breach-of-contract action filed by Parfitt Way

Management Corp. d/b/a Harbour Public House ("Plaintiff") against GSM by Nomad, LLC d/b/a

Nomad Airstream, Guillaume Langevin, and Steve Clement ("Defendants"), is Defendants'

motion to dismiss Plaintiff's claims against Langevin and Clement for insufficient service of

process pursuant to Fed. R. Civ. P. 12(b)(5) and, in the alternative, to dismiss Plaintiff's Third

Claim (against Langevin and Clement for breach of contract under the doctrine of piercing the

corporate veil) for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 32.)  For the reasons set forth below, Defendants' motion is granted in part and denied in part, and the Court reserves decision on of the remainder of that motion for a period of thirty days.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint asserts five claims.  (Dkt. No. 1 [Pl.'s Compl.].)  First, Plaintiff's Complaint claims that Defendant Nomad breached the contract with Plaintiff by failing to perform the contracted-for renovations and customization and failing to deliver the contracted-for trailer at the specified time.  (*Id.* at ¶¶ 44-50.)  Specifically, Plaintiff alleges that it performed all of its obligations under the contract and that Defendant Nomad's material breach of the contract caused it to suffer damages.  (*Id.*)

Second, Plaintiff's Complaint claims that Defendant Nomad breached the warranties contained in the contract by failing to perform the contracted-for renovations and customization and failing to deliver the contracted-for trailer.  (*Id.*  at ¶¶ 51-61.)  Specifically, Plaintiff alleges that Nomad warranted that it (a) would perform the agreed-upon services in a professional, competent, and timely manner, and (b) had the power to perform under the agreement.  (*Id.*)

Third, Plaintiff's Complaint claims that the Court should permit piercing of the corporate veil to hold Defendants Langevin and Clement personally liable for Nomad's breaches of the contract because they (a) exercised complete dominion and control over Nomad as to the transaction underlying the contract, (b) knew of, consented to, and directed the breach of the agreement and its warranties, and (c) realized personal financial benefit from improper use of moneys paid to Nomad by Plaintiff.  (*Id.* at  ¶¶ 62-71.)

Fourth, Plaintiff's Complaint claims that Defendants Langevin and Clement converted monies paid to Nomad by Plaintiff.  (*Id.* at ¶¶ 72-79.)  Specifically, Plaintiff alleges that Langevin and Clement took ownership and control over monies paid to Nomad, wrongly transferred, acquired, and used the monies for their personal benefit rather than to perform the work specified in the contract, and refused to return the monies when Plaintiff demanded they be returned.  (*Id.*)

Fifth, Plaintiff's Complaint claims that Defendants Langevin and Clement were unjustly enriched through acquiring and using the monies paid to Nomad by Plaintiff.  (*Id.* at ¶¶ 80-91.)  Specifically, Plaintiff alleges that Defendants Langevin and Clement had full knowledge of the benefit they received, that Plaintiff did not authorize their use of the monies paid to Nomad, and that they refused to return those monies when Plaintiff demanded they be returned.  (*Id.*)

### B.    Parties' Briefing on Defendants' Motion to Dismiss

### 1.    Defendants' Memorandum of Law

Generally, Defendants move to dismiss Plaintiff's Complaint for two reasons.  (Dkt. No. 32, Attach. 1, at 6-13 [Defs.' Mem. of Law].)  First, Defendants argue that the service of the summons and Complaint on Defendants Langevin and Clement was improper, depriving the Court of jurisdiction over the claims against them.  (*Id.* at 6-9.)  Specifically, Defendants argue that Plaintiff's service on Luis Marin (who accepted process at Nomad's business address) did not constitute personal service on Defendants Langevin and Clement pursuant to Fed. R. Civ. P. 4(e).  (*Id.* at 7.)  Defendants argue that the attempt to mail the summons and Complaint to them also was not adequate because the mailing was "returned as undeliverable," and that, in any event, service by mail is not a valid method under Fed. R. Civ. P. 4(e).  (*Id.*)  Defendants

additionally argue that the place where Plaintiff served the summons and Complaint to Mr. Marin is not their "dwelling place or abode" pursuant to Fed. R. Civ. P. 4(e) because, since before the lawsuit was initiated, they have been in Quebec, Canada, and unable to return to the United States. (*Id.*) Defendants also argue that Mr. Marin was not a designated agent for purposes of receiving process, either as to Defendants Langevin and Clement or Nomad. (*Id.* at 7-8.) Indeed, Defendants Langevin and Clement argue that they did not even receive actual notice of the lawsuit in a timely fashion from Mr. Marin, a disloyal consultant. Defendants Langevin and Clement argue that the lack of proper service prevents this Court from exercising jurisdiction over them, and that actual knowledge of the litigation is not a replacement for proper service. (*Id.* at 8-9.)

Second, Defendants argue that, even if service was proper, Plaintiff has failed to state a claim upon which relief can be granted as to its Third Claim against Defendants Langevin and Clement. (*Id.* at 9-13.) Specifically, Defendants argue that Plaintiff's allegations that Defendants Langevin and Clemant dominated Nomad and took Nomad funds for personal use are entirely conclusory and speculative and therefore are not sufficiently specific to plead entitlement to the doctrine of piercing the corporate veil. (*Id.*) Defendants also argue that disregarding the corporate form is "highly disfavored" under New York law. (*Id.* at 12-13.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff makes three arguments in opposition to Defendants' motion. (Dkt. No. 39, at 3-9 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that Defendants' motion to dismiss is untimely under Fed. R. Civ. P. 12(b) because such a motion asserting the defense of insufficient service must be made before pleading if a responsive pleading is allowed. (*Id.* at 3.) Plaintiff further argues that Defendants' motion, which was made after the filing of their Answer, is untimely. (*Id.*)

Second, Plaintiff argues that the Court cannot convert Defendants' Fed. R. Civ. P. 12(b)(5) motion to a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, but notes that, even if the Court treats Defendant's motion as a Fed. R. Civ. P. 12(c) motion, the standards for assessing such a motion are the same as the standard for assessing a Fed. R. Civ. P. 12(b)(6) motion. (*Id.* at 4.)

Third, Plaintiff argues that, even if Defendants' motion were found to be timely, the service of process would be sufficient. (*Id.* at 5-6.) Specifically, Plaintiff argues that the service to Mr. Marin was sufficient under Fed. R. Civ. P. 4(e) and N.Y. C.P.L.R. § 308 because (a) he was an employee of Nomad who held himself out to be a manager, (b) the service occurred at Nomad's place of business, and (c) and the summons and Complaint were also mailed to Nomad's place of business following service on Mr. Marin. (*Id.*) Plaintiff also notes that Mr. Marin e-mailed a scanned copy of the summons and Complaint to Defendants Langevin and Clement and physically delivered the summons and Complaint to Defendant Langevin at the United State-Canadian border within a week of receiving them. (*Id.*)

Fourth, Plaintiff argues that it has sufficiently pled facts warranting piercing of the corporate veil with regard to Plaintiff's breach-of-contract claim against Langevin and Clement. (*Id.* at 7-9.) Specifically, Plaintiff argues that Defendants Langevin and Clement had complete dominance over Nomad for the relevant transaction because they were the only two members of the LLC, they conducted the negotiations with Plaintiff, and Defendant Langevin signed the contract. (*Id.* at 8.) Plaintiff additionally argues that it alleged that it paid money to Nomad, which Defendants Langevin and Clement used to pay off personal debts rather than perform the contracted work, and that such action constitutes a sufficient wrongful use of their domination of Nomad. (*Id.* at 8-9.)

### 3. Defendants' Reply Memorandum of Law

Generally, Defendants make four arguments in reply to Plaintiff's arguments. (Dkt. No. 41, Attach. 2, at 3-10 [Defs.' Reply Mem. of Law].) First, Defendants argue that their motion is timely because they have continuously objected to the sufficiency of the service of process, noting that they pled insufficient process in their Answer and made it clear at the Rule 16 conference in this case that they intended to move to dismiss on grounds of insufficient service of process. (*Id.* at 3-4.)

Second, Defendants argue that neither Langevin nor Clement was properly served under either Fed. R. Civ. P. 4 or N.Y. C.P.L.R § 308. (*Id.* at 4-7.) Specifically, the address at which the summons and Complaint were served on Mr. Marin and to which they were mailed was no longer Defendants Langevin and Clement's place of business because they had been (and have been) detained in Canada since February 2017. (*Id.* at 5.) Defendants further argue that Mr. Marin was not authorized to accept service on their behalf and in fact was their "adversary" at the time of service, as well as that the alleged e-mail transmission from Mr. Marin of the scanned summons and Complaint is not acceptable under either the federal or New York rules of procedure; Defendants also deny that Mr. Marin delivered the summons and Complaint to Defendant Langevin at the border. (*Id.* at 5-6.)

Third, Defendants argue that they have not waived their objections to improper service by having actual knowledge of the litigation against them. (*Id.* at 7.)

Fourth, Defendants argue that Plaintiff's conclusory and "bare bones" factual allegations are insufficient to show cause to pierce the corporate veil. (*Id.* at 7-11.) Specifically, Defendants argue that using money from the contract with Plaintiff to pay tax debts owed to

New York State was not a misuse of Nomad's funds for personal purposes because the tax debts

were Nomad's debts, not the personal debts of Defendants Langevin or Clement.  (*Id.* at 9-10.)

Additionally, Defendants argue that Plaintiff has not pled any of the six factors related to

showing fraud under the heightened pleading standard for fraud-based claims.  (*Id.*)

## II.    GENERAL LEGAL STANDARD

Rule 12(b)(5) of the Federal Rules of Civil Procedure permits a party to move for

dismissal of a complaint based on inadequate service of process.  Fed. R. Civ. P. 12(b)(5).  "In

considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must

look[ ] to matters outside the complaint to determine whether it has jurisdiction."  *Cassano v.

Altshuler*, 186 F.Supp.3d 318, 320 (S.D.N.Y. 2016); *accord UMG Recordings, Inc. v. Frawley*,

08-CV-0765, 2011 WL 13234394, at *3 (N.D.N.Y. July 21, 2011) (Suddaby, J.).  "When a

defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving

adequate service."  *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *accord Khan v.

Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order).

## III.    ANALYSIS

### A.    Whether Defendants' Motion to Dismiss Based on Insufficient Service of Process Was Untimely

After carefully considering the matter, the Court answers this question in the negative for

the reasons in Defendants' reply memorandum of law.  (Dkt. No. 41, Attach. 2, at 3-4 [Defs.'

Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

There exists justifiable confusion as to whether a Fed. R. Civ. P. 12(b)(5) motion, which

is commonly referred to as a "pre-answer" motion, is the proper procedural vehicle for attacking

the sufficiency of service of process *after* an answer has been filed.  After carefully considering

the matter, and reviewing the relevant cases, the Court finds that, notwithstanding the "before pleading" language of Fed. R. Civ. P. 12(b), a post-answer motion for insufficient service of process is permissible where the defense has been asserted in the answer.

In analyzing this issue, commentators have observed that "federal courts have allowed untimely [Rule 12(b)] motions if the defense has been previously included in the answer." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1361 (3d ed.) (citations omitted).  At least one judge of this District has applied this point of law specifically to Fed. R. Civ. P. 12(b)(5) motions.  *See, e.g., Stuart v. Paulding*, 12-CV-0025, 2014 WL 2011240, at *2 (N.D.N.Y. May 16, 2014) (Mordue, J.) ("Courts have allowed untimely Rule 12(b)(5) motions if the defense has been previously included in the answer.") (internal quotation marks and citation omitted). Furthermore, this point of law finds support in Fed. R. Civ. P. 12(i).  Rule 12(i) provides that if a party so moves, a court must hear and decide Fed. R. Civ. P. 12(b)(1)-(7) defenses before trial, whether the defenses are asserted in a motion *or by pleading*.  Fed. R. Civ. P. 12(i).[1]

Furthermore, Defendants have not waived this defense.  Rule 12(h) of the Federal Rules of Civil Procedure indicates that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by: . . . (B) failing to either: (i) make it by motion under this rule; *or (ii) include it in a responsive pleading* or in an amendment allowed by Rule 15(a)(1) as a matter of course."  Fed. R. Civ. P

---

[1]      *See, e.g., King v. Taylor*, 694 F.3d 650, 657, n.2 (6th Cir. 2012) ("[W]hen the [insufficient-service-of-process] defense has been preserved in an answer and is later raised in a pre-trial motion, a court will look past the label chosen by the movant and treat the motion as a request for a ruling on the defense made under . . . Rule 12(i).")*; Landry v. Chabert Operational Mgmt. Co.*, LLC, 16-CV-3900, 2016 WL 6475784, at *2 (E.D. La. Nov. 2, 2016) ("Several other defendants in this case filed motions to dismiss pursuant to Rule 12(b) [including a motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5)] prior to filing an answer (a more familiar and preferred way to assert 12(b) defenses).  Duplantis followed an alternative procedure [for filing its Rule 12(b)(5) motion] made available by the Federal Rules [specifically, Rule 12(i)].") (citation omitted).

12(h)(1) (emphasis added).  Defendants pleaded insufficiency of service of process as an affirmative defense in their Answer.  (Dkt. No. 10, at ¶ 94 [Defs.' Answer]).  Because Defendants included this affirmative defense in their Answer, they have not waived their ability to challenge the sufficiency of the service of process despite filing their Fed. R. Civ. P. 12(b)(5) motion after filing the answer.  *See Onewest Bank N.A. v. Louis*, 15-CV-0597, 2016 WL 3552143, at \*6 (S.D.N.Y. June 22, 2016) (finding defendant had waived his right to assert the defense of insufficient service of process by failing to either file a pre-answer motion asserting the defense or including the defense in his answer); *Stuart*, 2014 WL 2011240, at \*3 ("'[T]he defense of insufficient service of process is waived if not raised in the answer [or in a motion filed prior to or contemporaneously with the answer].'"); *Seward & Kissel v. Smith Wilson Co., Inc.*, 814 F. Supp. 370, 374 (S.D.N.Y. 1993) (finding that the defendant lost the right to file a 12[b][5] motion once he filed the answer where the answer did not contain insufficiency of service as an affirmative defense).

Finally, although Plaintiff did not argue as much, the Court also finds that Defendants' assertion of insufficiency of the service of process is not untimely merely because their Answer was filed out-of-time.  In a Text Order on August 3, 2017, the Court denied Plaintiff's motion to strike the Answer as untimely, noting that it would set aside any entry of default and permit filing of the Answer based on its finding that "Defendants' default was not willful, that Defendants have at least one 'meritorious' defense, and that Plaintiff has not demonstrated actual prejudice."  (Dkt. No. 23 [Text Order, 8/3/2017].)  Given this previous finding that Defendants should be permitted to file their Answer, the Court declines to find that any of the defenses asserted in that Answer are untimely or waived as a result of that excused untimely filing.

### B.    Whether Service Was Proper Under Fed. R. Civ. P. 4 or N.Y. C.P.L.R. § 308

After carefully considering the matter, the Court answers this question in the negative for the following reasons.

Plaintiff's and Defendants' arguments focus on whether the service on Defendants Langevin and Clement was proper pursuant to Fed. R. Civ. P. 4(e) and N.Y. C.P.L.R. § 308 (which is made applicable in federal cases by Fed. R. Civ. P. 4[e][1]).   However, Fed. R. Civ. P. 4(e) would not govern the service in this case because Defendants Langevin and Clement were present (an had been present for between three and seven weeks) in Canada at the time of service on March 22, 2017.[2] *See* Fed. R. Civ. P. 4(e) (titled "Serving an Individual *Within a Judicial District of the United States*," and specifically stating that the methods of service outlined in the Rule apply to where an individual "may be served in a judicial district of the United States") (emphasis added). Moreover, even if Fed. R. Civ. P. 4(e) and N.Y. C.P.L.R. § 308 did apply, Plaintiff did not leave a copy of the summons and complaint at each individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, in satisfaction of Fed. R. Civ. P. 4(e)(2)(B).  Similarly, Plaintiff did not deliver a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, in satisfaction of Fed. R. Civ. P. 4(e)(2)(C).[3] Finally, Plaintiff did not follow New York

---

[2]       Both Langevin and Clement state in affidavits that they are citizens of Canada, and have been denied reentry into the United States by U.S. Customs and Border Protection since "approximately February 2017."  (Dkt. No. 32, Attach. 8, at ¶ 1 [Langevin Aff.]; Dkt. No. 32, Attach. 9, at ¶ 1 [Clement Aff.].)

[3]       Plaintiff argues that Luis Edward Marin had "held himself out as a manager of Nomad and the authorized agent to accept service on all Defendants."  (Dkt. No. 39, at 5 [attaching page "3" of Pl.'s Opp'n Mem. of Law].)  However, good-faith reliance on apparent authority suffices for purposes of Fed. R. Civ. P. 4(e)(2)(C) only where the principal has held out another person as possessing certain authority, not where the agent has done so.  *See, e.g., McDonald v. SEIU Healthcare Pa.*, 13-CV-2555, 2014 WL 4672493, at *7-8 (M.D. Pa. Sept. 18,

State law for serving a summons, in satisfaction of Fed. R. Civ. P. 4(e)(1).[4]

---

2014); *McCombs v. Granville Exempted Village Sch. Dist.*, 07-CV-0495, 2009 WL 467066, at *5 (S.D. Oh. Feb. 24, 2009).  Here, Plaintiff does not point out how the individual Defendants held out Mr. Marin as possessing the authority to receive service of process for them.  Indeed, Defendants have adduced evidence that Mr. Marin did not possess such authority.  (*See, e.g.,* Dkt. No. 32, Attach. 8, at ¶¶ 4, 5, 14 [Langevin Decl.]; Dkt. No. 32, Attach. 9, at ¶¶ 4, 5, 14 [Clement Decl.].)  Alternatively, Plaintiff argues that Mr. Marin was "an agent authorized by appointment or by law to receive service of process" for purposes of Fed. R. Civ. P. 4(e)(2)(C), because he fell into one of the categories set forth in N.Y. C.P.L.R. § 311-a.  (Dkt. No. 39, at 5 [attaching page "3" of Pl.'s Opp'n Mem. of Law].)  However, Mr. Marin was neither a member nor a manager of the corporate Defendant.  (Dkt. No. 32, Attach. 8, at ¶ 5 [Langevin Decl.]; Dkt. No. 32, Attach. 9, at ¶ 5 [Clement Decl.].)  Moreover, Defendants have adduced evidence that Mr. Martin was neither authorized by appointment to receive process for the individual Defendants nor designated by the corporate Defendant to do so.  (*See, e.g.,* Dkt. No. 32, Attach. 8, at ¶¶ 4, 5, 14 [Langevin Decl.]; Dkt. No. 32, Attach. 9, at ¶¶ 4, 5, 14 [Clement Decl.].)  The Court notes that, setting aside the fact that Plaintiff's attorney's "affidavit" is not notarized, he lacks personal knowledge to testify that Mr. Marin "was authorized to receive process pursuant to NYS CPLR 311-a." (Dkt. No. 37, at ¶ 4 [Atty. Norfolk Decl.].)  Finally, the Court notes that the process server's affidavit also does not suffice under the circumstances.  (Dkt. No. 4.)  *See Stuyvesant Fuel Serv. Corp. v. 99-105 3ʳᵈ Ave. Realty LLC*, 192 Misc.2d 104, 106 (N.Y. Sup. Ct., Bronx Cty. 2002) (finding to be insufficient the affidavit of process server stating that recipient was the "managing agent" of the corporate defendant, a fact which the corporate members disputed).

[4]        Plaintiff argues that it followed N.Y. C.P.L.R. § 308(2) by doing one or both of two things: (1) hand-delivering the summons and complaint to Mr. Marin (a person of suitable age and discretion) at Defendants' actual place of business on March 22, 2017, and (2) mailing the summons and complaint to Defendants' actual place of business on April 13, 2017.  (Dkt. No. 39, at 5-6 [attaching pages "3" and "4" of Pl.'s Opp'n Mem. of Law].)  However, Defendants have adduced evidence that, as of March 22, 2017 (and certainly as of April 13, 2017), the place of service had ceased being the individual Defendants' "actual place of business." (*See, e.g.,* Dkt. No. 32, Attach. 8, at ¶¶ 1, 3, 4, 6, 10 [Langevin Decl.]; Dkt. No. 32, Attach. 9, at ¶¶ 1, 3, 4, 6, 10 [Clement Decl.].)  This evidence is sufficient even under N.Y. C.P.L.R. § 308(6), which broadly defines the term "actual place of business" as including "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business."  This is because Plaintiff points to no evidence that, through regular solicitation or advertisement before March 22, 2017, the individual Defendants held out the place of service as their place of business.  In any event, courts have indicated a willingness to look past public listings and consider whether the individuals to be served no longer actually worked at the place of service at the time of service.  *See, e.g., Balendran v. N. Shore Med. Group, P.C.*, 251 A.D.2d 522, 524 (N.Y. App. Div., 2d Dept. 1998) (finding that plaintiffs failed to establish that process had been served on a physician-defendant at his actual place of business, despite the existence of a medical directory listing the place of service as the physician's actual

Although neither party squarely submitted arguments regarding Fed. R. Civ. P. 4(f), Plaintiff did acknowledge that, by focusing on Fed. R. Civ. P. 4(e) in their initial memorandum of law, "Defendants are applying the service requirements for individuals *within* the U.S., while they claim they were out of the Country."  (Dkt. No. 39, at 6 [Pl.'s Opp'n Mem. of Law].) Plaintiff therefore appears to tacitly acknowledge that Fed. R. Civ. P. 4(e) is not applicable here and it has not provided any allegations or evidence to contradict the assertion of Defendants Langevin and Clement that they were in Canada at the time in question; notably, Plaintiff's reliance on Mr. Marin's statement that he delivered the summons and Complaint to Defendant Langevin at the United States-Canadian border seems to acknowledge that Defendants Langevin and Clement were in fact in Canada.  (Dkt. No. 38, at ¶ 8 [Marin Aff.]; Dkt. No. 39, at 6 [Pl.'s Opp'n Mem. of Law].)

Due to Defendants Langevin and Clement's ongoing presence in Canada (as well as their Canadian citizenship), service is more appropriately analyzed pursuant to Fed. R. Civ. P. 4(f), regarding service on an individual in a foreign country.  According to Fed. R. Civ. P. 4(f)(1), process may be served at a place not within a judicial district of the United States "by any internationally agreed means of service that are reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial

---

place of business, where an affidavit of the office manager of the group with which the physician had been associated indicated that the physician had retired from the practice approximately 21 months before service); *cf. Jackson v. Cty. of Nassau*, 339 F. Supp.2d 473, 478 (E.D.N.Y. 2004) (finding that service of process on county medical center's designated agent was insufficient to effect service on physician under New York statute permitting service at a defendant's "actual place of business," where physician had ceased working at the medical center almost 12 months before time of service).

Documents ["the Hague Convention"]."[5]  Fed. R. Civ. P. 4(f)(1).  "The Hague Convention

provides for several alternate methods of service: (1) service through the Central Authority of

member states; (2) service through consular channels; (3) service by mail if the receiving state

does not object; and (4) service pursuant to the internal laws of the state."[6]  *Burda Media, Inc. v.

Viertel*, 417 F.3d 292, 300 (2d Cir. 2005).  Plaintiff does not allege that it attempted to serve

Defendants Langevin and Clement through the Canadian Central Authority or through consular

channels.  Additionally, although Canada (and Quebec more specifically) has not objected to

service by mail in the context of the Hague Convention, Plaintiff has not alleged or shown that it

sent the summons and Complaint to Defendants Langevin and Clement by registered mail in

Quebec.  *See Heredia v. Transport S.A.S., Inc.*, 101 F. Supp. 2d 158, 161 (S.D.N.Y. 2000)

(noting that "Canada does not object to service by postal channels" and therefore "service by

registered mail in Quebec is adequate service under the Convention").[7]

---

[5]        The United States and Canada are both signatories to the Hague Convention.  *W.
Supreme Buddha Ass'n, Inc. v. Oasis World Peace and Health Found.*, 08-CV-1374, 2011 WL
856378, at *2 n.3 (N.D.N.Y. Mar. 9, 2011) (Homer, M.J.); *see also Icon DE Holdings LLC v.
Eastside Distribs.*, 14-CV-2832, 2015 WL 4557278, at *1-2 (S.D.N.Y. July 28, 2015) (noting
that Fed. R. Civ. P. 4(f)(2) did not apply in a case where both Canada and the United States were
signatories to the Hague Convention and the Hague Convention "clearly delineates methods of
service").

[6]        Article 1 of the Hague Convention states that the Convention does not apply
when the addresses of the foreign defendants are unknown.  *Microsoft Corp. v. Does*, 12-CV-
1335, 2012 WL 5497946, at *2 (E.D.N.Y. Nov. 13, 2012).  However, the Court finds that, under
the circumstances, the individual Defendant's mere failure to explicitly reveal their Quebec
addresses in their papers does not preclude application of the Hague Convention.  There is no
indication that the individual Defendants have made any attempt to conceal their whereabouts or
withhold their Quebec addresses from Plaintiff.  *See Microsoft Corp.*, 2012 WL 5497946, at *2
(finding the Hague Convention not applicable to defendants who "used sophisticated means to
conceal their identities and locations" and could not be located "[d]espite the most diligent
efforts on the part of the [p]laintiffs").

[7]        The Court notes that Quebec law requires the translation into French of all
documents that commence actions.  *Icon DE Holdings LLC*, 2015 WL 4557278, at *2 (noting

Plaintiff suggests two ways in which it served the individual Defendants in Quebec: (1) by Mr. Marin's e-mail of a scanned copy of the summons and Complaint to Defendants Langevin and Clement; and (2) by Mr. Marin's alleged delivery of the summons and Complaint to Defendant Langevin at the United States-Canadian border.  (Dkt. No. 39, at 6 [Pl.'s Opp'n Mem. of Law].)  As to Plaintiff's first suggestion, e-mail is not an explicitly recognized method of service of legal documents under the Hague Convention, though it has been deemed appropriate (where a country has not specifically objected to e-mail service) in conjunction with a court order, particularly after other methods of service have failed.  *See Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (granting plaintiff's motion to serve defendant by e-mail where plaintiff has show that it has reasonably attempted to effectuate service but the circumstances were such that the court's intervention was necessary); *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 262 (S.D. Ohio 2013) ("[A] court may order service by email, where appropriate.").  However, even if the Hague Convention and/or Quebec law do not prohibit service by e-mail in all situations, Plaintiff had not sought a court order to serve the individual Defendants by e-mail.  *See* Fed. R. Civ. P. 4(f)(3) (stating that an individual may be served "by other means not prohibited by international agreement, *as the court orders*"); Quebec Code of Civ. P. C-25.01, § 133 (indicating that notification [which is a

---

that Quebec requires translation into French of documents that commence actions other than where the Central Authority allows English); *see also Translation Requirements*, Justice Quebec, https://www.justice.gouv.qc.ca/en/information-for-professionnals/legal-professionals/service-abr oad-of-judicial-and-extrajudicial-documents-in-civil-or-commercial-matters/translation-requirem ents/ (last visited Apr. 10, 2018) ("Under a reservation made by Quebec, a French translation of documents which commence actions is required.").  However, courts have noted that this translation requirement applies only to documents served by the Central Authority or by alternative method under Article 5 of the Hague Convention, which does not include direct registered mail.  *See Heredia*, 101 F. Supp. 2d at 161-62 (collecting cases).

separate requirement under Quebec law apart from actual service] may be made by technological means, but even that is effective as to an unrepresented party only with the party's consent or a court order).  The e-mail sent from Mr. Marin to Defendants Langevin and Clement therefore does not constitute sufficient service of process.

As to Plaintiff's second suggestion (i.e., that the alleged personal delivery to Defendant Langevin by Mr. Marin at the United States-Canadian border constituted proper service), neither the Hague Convention nor Quebec law not supports Plaintiff's argument.  In particular, Article 10 of the Hague Convention states that, provided the signatory state does not object, the Hague Convention does not interfere with "the freedom of judicial officers, officials or other competent persons [or any person interested in a judicial proceeding] of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons *of the State of destination*."  Hague Convention, Article 10(b), (c) (emphasis added); *see also Dimensional Comms. Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 656 (D. N.J. 2002) (noting that Canada affirmatively stated that it did not object to the methods in Article 10[b] and [c]).  The Code of Civil Procedure for Quebec states that service within Quebec must ordinarily be made by bailiff or otherwise by a person within a specified radius who is designated to act under the bailiff's authority.  *See* Quebec Code of Civ. P. C-25.01, § 116 ("Service or notification by bailiff is made by delivering the document to the addressee personally, or, if this cannot be done, by leaving it at the addressees's domicile or residence with a person who appears to be capable of receiving it."); Quebec Code of Civ. P. C-25.01, § 117 ("[I]f there is no bailiff firm in a radius of 75 kilometers from the place of service, service may be made either by a person of full age residing within that radius and designated by the bailiff to act in the bailiff's name and under the bailiff's authority."); Quebec Code of Civ. P. C-25.01, § 139 ("An originating application must

15

be served by bailiff.  The same applies to other pleadings required to be served under this Code

or another law."); *see also Icon DE Holdings LLC*, 2015 WL 4557278, at *2 (noting that the

Hague Convention, as applied in Quebec, allows for informal service either through direct mail

to a defendant or "contacting a bailiff directly to arrange for service by hand"); *Chambre des*

*huissiers du Quebec et Lussier*, 1984 CarswellQue 302, ¶ 5 (Q.A.C. 1984) (noting that the

"ordinary procedure" for suing in Provincial Court is service by bailiff, which is "the rule" in

such cases).  Because Mr. Marin is not a judicial officer, official, or other competent person of

Quebec, or a bailiff or person designated by a bailiff, it does not appear that his personal delivery

of the summons and Complaint to Defendant Langevin (who remained in Quebec) would be

proper under the Hague Convention and Quebec law.[8]

Based on the above, Plaintiff has not shown by a preponderance of the evidence that the

service as to Defendants Langevin and Clement was proper under Fed. R. Civ. P. 4(f).  However,

a court is not ordinarily required to dismiss an action where service is insufficient, but may grant

leave to allow the plaintiff to cure the insufficiency within a specified time.  *See Burdick v.*

*Oswego Cnty, NY*, 15-CV-0353, 2015 WL 6554515, at *2-3 (N.D.N.Y. Oct. 29, 2015)

(D'Agostino, J.).  Pursuant to Fed. R. Civ. P. 4(m), the Court must extend the time for service if

---

[8]     There are additional questions that suggest that Plaintiff has not met its burden to show adequate service.  First, Defendant Langevin disputes that Mr. Marin ever actually delivered a copy of the summons and Complaint to him at the border.  (Dkt. No. 41, at ¶ 4 [Langevin Aff.].)  Second, Mr. Marin stated that he handed Defendant Langevin the summons and Complaint at the border; he did not assert that Defendant Clement was also there.  (Dkt. No. 38, at ¶ 8 [Marin Aff.].)  Consequently, there is nothing at all to suggest that such action would have constituted personal service on Defendant Clement even if appropriate as to Defendant Langevin.

the plaintiff shows good cause for the failure.[9] Fed. R. Civ. P. 4(m). "'Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control;' . . . inadvertence, neglect, mistake, or misplaced reliance does not constitute good cause." *Stuart*, 2013 WL 1336602, at *3. However, a court may also extend the time, at its discretion, even in the absence of good cause. "In determining whether a discretionary extension is appropriate in the absence of good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010). Courts may determine whether a discretionary extension is appropriate even in the absence of good cause by considering (a) whether the applicable statutes of limitations would bar the action if refiled, (b) whether the defendant has actual notice of the claims asserted, (c) whether the defendant attempted to conceal the defect in service, and (d) whether the defendant would be prejudiced by the extension. *DeLuca*, 695 F. Supp. 2d at 66.

---

[9]     Rule 4(m) of the Federal Rules of Civil Procedure explicitly states that its time limit on service does not apply to service in a foreign country under Fed. R. Civ. P. 4(f). Courts have interpreted this statement as an exception from the time limit that governs service on domestic defendants. *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 332 F.R.D. 442, 449-50 (S.D.N.Y. 2017); *In re South African Apartheid Litig.*, 643 F. Supp. 2d 423, 432-33 (S.D.N.Y. 2009). However, the Second Circuit has held that, "[a]lthouh Rule 4(m) creates an exception for 'service in a foreign country pursuant to subdivision (f)', which sets forth procedures for such service, this exception does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign country.'" *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005); *see also DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010) ("We have previously held inapplicable the foreign country exception to [Rule] 4(m)'s 120-day time limit for service where a party did not attempt service within the 120-day limit and 'had not exactly bent over backward to effect service.'"). Because Plaintiff has not attempted to serve Defendants Langevin or Clement in Quebec (setting aside Mr. Marin's independent actions in e-mailing the summons and Complaint and allegedly delivering them personally to Defendant Langevin), the Court finds that Plaintiff cannot benefit from any exemption from the usual time limits imposed by Fed. R. Civ. P. 4(m).

Whether or not Plaintiff had good cause for failing to properly serve process on Defendants Langevin and Clement in Quebec, the Court finds that, based on the above analysis, the circumstances of this case warrant permitting Plaintiff a reasonable opportunity to cure the defects in its service of those Defendants.

As to the first factor, Plaintiff's claims would not be barred in the event it was required to refile. *See* N.Y. C.P.L.R. § 213(1) (specifying a six year statute of limitations for unjust enrichment claims); N.Y. C.P.L.R. § 214(3) (specifying a three year statute of limitations for conversion claims). Plaintiff alleges that the contract between it and Nomad that is the subject of all Plaintiff's claims was entered into on or about April 22, 2016, and therefore Plaintiff is still well within the statute of limitations periods for the claims against Defendants Langevin and Clement. This factor therefore weighs against granting a discretionary extension.

As to the second factor, Defendants do not deny that they have acquired notice of this action; Defendant Langevin acknowledges that Mr. Marin e-mailed a scanned version of the summons and Complaint, and Defendants acknowledge that they hired a New York attorney to represent them in this lawsuit, who filed an Answer on May 31, 2017. (Dkt. No. 10 [Defs.' Answer]; Dkt. No. 41, at ¶ 7 [Langevin Aff.].) While this notice does not negate the improper service, it does serve as a factor weighing in favor of allowing Plaintiff an opportunity to effectuate proper service.

As to the third factor, there is no reason to believe that Defendants attempted to conceal their location in Canada. Plaintiff's attorney states in his affidavit that, after conducting research as to Defendants Langevin and Clement's business and personal locations, there was nothing to provide reason to believe that Defendants Langevin and Clement were in Canada at the time the Complaint was filed and served. (Dkt. No. 37, at ¶¶ 7-10 [Norfolk Aff.].) The first mention of

their presence in Quebec, Canada, was in the July 31, 2017, memorandum in opposition to Plaintiff's motion to strike the Answer. (Dkt. No. 21, Attach. 1, at 3-4, 6-7 [Defs.' Opp'n Mem. of Law]; Dkt. No. 21, Attach. 2, at ¶ 1 [Clement Aff.]; Dkt. No. 21, Attach. 3, at ¶ 1 [Langevin Aff.].) Defendants did not file the current motion to dismiss until October 27, 2017, approximately three months after they had notified Plaintiff that they were in Quebec and unable to re-enter the United States. (Dkt. No. 32 [Defs.' Motion to Dismiss].) There is no indication that Plaintiff attempted to serve Defendants in Quebec after learning of their presence there and their objections to service at Nomad's location; and Plaintiff did not request an Order from this Court allowing re-service to cure the alleged insufficient service. Although the Court recognizes that Plaintiff may have had difficult in learning that Defendants Langevin and Clement were in Quebec at the time the summons and Complaint were served, the Court finds that this factor weighs slightly in favor of Defendants.

Lastly, as to the fourth factor, the Court finds that Defendants would not be prejudiced by allowing Plaintiff an extension of time to effect proper service. Much of the potential prejudice in this case is ameliorated by the fact that Defendants had actual notice of the claims against them (as discussed above) and therefore they have not been hindered in their ability to defend themselves in this litigation. Additionally, the Court has the discretion to order any other means of service not prohibited by international agreements, including service by direct registered mail or e-mail, that would allow for proper service without causing an extensive delay in this litigation. Fed. R. Civ. P. 4(f)(3); *see also Elsevier, Inc. v. Siew Yee Chew*, 17-CV-6225, 2018 WL 1275752, at *2-4 (S.D.N.Y. Mar. 12, 2018) (allowing e-mail service on Chinese and Malaysian defendants without requiring plaintiff to first show that other methods were unavailable or unsuccessful, and citing cases); *Cold Springs Constr. Co. v. Spikes*, 11-CV-0700,

2012 WL 41967, at *2 (W.D.N.Y. Jan. 9, 2012) ("Rule 4[f][3] provides 'an independent basis for service of process and is neither extraordinary relief nor a last resort to be used only when parties are unable to effectuate service under subsections [f][1] and [f][2]'"); *W. Supreme Buddha Ass'n, Inc.* 2011 WL 856378, at *1 (noting that service under Fed. R. Civ. P. 4[f][3] "'is neither a last resort nor extraordinary relief [though it] . . . must also comport with constitutional notions of due process . . . [namely] notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'").  Given that the individual Defendants acknowledge that they are already in possession of a copy of the summons and Complaint (received via e-mail from Mr. Marin) and have been able to defend themselves in this litigation (including through filing the Answer, responding to Plaintiff's motion to strike the Answer, and pursuing the current motion to dismiss that includes a substantive challenge to one of Plaintiff's claims), due process would not be offended by allowing service by direct registered mail or e-mail in this case to remedy the defect in Plaintiff's initial service of the summons and Complaint on Defendants Langevin and Clement.  This course of action will allow prompt correction of the insufficient service and will best serve the interests of judicial efficiency and economy.

After balancing the above factors, the Court finds that it is appropriate to allow Plaintiff the opportunity to effectuate proper service on Defendants Langevin and Clement.  The Court therefore orders that Plaintiff must serve the summons and Complaint on Defendants Langevin and Clement by either direct registered mail or e-mail within thirty (30) days of the issuance of this Decision and Order.  It appears that Plaintiff is already in possession of the relevant e-mail addresses for these Defendants based on Marin's affidavit.  (Dkt. No. 38, at ¶ 6 [Marin Aff.].)  At the end of this thirty day period, the Court will either dismiss Plaintiff's claims against

Defendants Langevin and Clement for insufficient service of process or decide the merits of Defendants' failure-to-state-a-claim argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 32) is **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part; and it is further

**ORDERED** that Plaintiff shall, within **THIRTY (30) DAYS** from the date of this Decision and Order, serve the summons and Complaint on Defendants Langevin and Clement by sending the summons and Complaint either by direct registered mail to their addresses in Quebec or by e-mail to the e-mail addresses that Mr. Marin states he used to send copies of the summons and Complaint to Defendants Langevin and Clement on March 22, 2017, and file a certificate of such service with the Court; and it is further

**ORDERED** that decision on the failure-to-state-a-claim portion of Defendants' motion (Dkt. No. 32) is **<u>RESERVED</u>** for a period of **THIRTY (30) DAYS** from the date of this Decision and Order, or until Plaintiff files the aforementioned certificate of service, whichever is sooner.

Dated: May 24, 2018
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

21