UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PARFITT WAY MANAGEMENT CORP.
d/b/a HARBOUR PUBLIC HOUSE,

                        Plaintiff,

v.                                                         8:17-CV-0299
                                                             (GTS/CFH)
GSM BY NOMAD, LLC d/b/a NOMAD
AIRSTREAM; GUILLAUME LANGEVIN;
and STEVE CLEMENT,

                        Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

BRIGGS NORFOLK, LLP                           MATTHEW D. NORFOLK, ESQ.
  Counsel for Plaintiff
2296 Saranac Avenue
Lake Placid, NY 12946

THE WAGONER FIRM, PLLC                 MATTHEW D. WAGONER, ESQ.
  Counsel for Defendants                          MATTHEW A. TOPOROWSKI, ESQ.
8 Thurlow Terrace
Albany, NY 12203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this breach-of-contract action filed by Parfitt Way Management Corp. d/b/a Harbour Public House ("Plaintiff") against GSM by Nomad, LLC d/b/a Nomad Airstream, Guillaume Langevin, and Steve Clement ("Defendants"), is Defendants' motion to dismiss Plaintiff's Third Claim (against Defendants Langevin and Clement for breach of contract under the doctrine of piercing the corporate veil) pursuant to Fed. R. Civ. P. 12(b)(6)

for failure to state a claim upon which relief can be granted .[1] (Dkt. No. 32.) For the reasons set forth below, Defendants' motion is granted. However, Plaintiff's Third Claim is dismissed only without prejudice.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint asserts five claims. (Dkt. No. 1 [Pl.'s Compl.].) First, Plaintiff's Complaint claims that Defendant Nomad breached the contract with Plaintiff by failing to perform the contracted-for renovations and customization and failing to deliver the contracted-for trailer at the specified time ("First Claim"). (*Id.* at ¶¶ 44-50.) Specifically, Plaintiff alleges that it performed all of its obligations under the contract and that Defendant Nomad's material breach of the contract caused it to suffer damages. (*Id.*)

Second, Plaintiff's Complaint claims that Defendant Nomad breached the warranties contained in the contract by failing to perform the contracted-for renovations and customization and failing to deliver the contracted-for trailer ("Second Claim"). (*Id.* at ¶¶ 51-61.) Specifically, Plaintiff alleges that Nomad warranted that it (a) would perform the agreed-upon services in a professional, competent, and timely manner, and (b) had the power to perform under the agreement. (*Id.*)

Third, Plaintiff's Complaint claims that the Court should permit piercing of the corporate veil to hold Defendants Langevin and Clement personally liable for Nomad's breach of the contract and warranties because they (a) exercise complete dominion and control over Nomad as to the transaction underlying the contract, (b) knew of, consented to, and directed the breach of

---

[1] Defendants had also moved to dismiss based on insufficient service of process. That aspect of Defendants' motion was decided in this Court's Decision and Order of May 24, 2018. (Dkt. No. 49 [Decision & Order, 5/24/2018].)

the agreement and its warranties, and (c) realized personal financial benefit from improper use of monies paid to Nomad by Plaintiff ("Third Claim"). (*Id.* at ¶¶ 62-71.)

Fourth, Plaintiff's Complaint claims that Defendants Langevin and Clement converted monies paid to Nomad by Plaintiff ("Fourth Claim"). (*Id.* at ¶¶ 72-79.) Specifically, Plaintiff alleges that Langevin and Clement took ownership and control over monies paid to Nomad, wrongly transferred, acquired, and used the monies for their personal benefit rather than to perform the work specified in the contract, and refused to return the monies when Plaintiff demanded they be returned. (*Id.*)

Fifth, Plaintiff's Complaint claims that Defendants Langevin and Clement were unjustly enriched through acquiring and using the monies paid to Nomad by Plaintiff ("Fifth Claim"). (*Id.* at ¶¶ 80-91.) Specifically, Plaintiff alleges that Defendants Langevin and Clement had full knowledge of the benefit they received, that Plaintiff did not authorize their use of the monies paid to Nomad, and that they refused to return those monies when Plaintiff demanded they be returned. (*Id.*)

      **B.**    **Parties' Briefing on Defendants' Motion to Dismiss**

           **1.**    **Defendants' Memorandum of Law**

As relevant to this Decision and Order, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted as to its Third Claim against Defendants Langevin and Clement. (Dkt. No. 32, Attach. 1, at 9-13 [Defs.' Mem. of Law].) Specifically, Defendants argue that Plaintiff's allegations related to Langevin and Clement's exercise of complete dominance over Nomad in respect to the transaction attacked are either purely conclusory or based only on information and belief and therefore do not plausibly suggest the facts required.

3

(*Id.*)  In the alternative, Defendants argue that Plaintiff's allegations related to the use of such domination to commit fraud or wrongdoing against Plaintiff (resulting in injury) are also either purely conclusory or based only on information and belief and therefore do not meet the heightened pleading standard of Fed. R. Civ. P. 9(b).  (*Id.*)  Finally, Defendants also argue that disregarding the corporate form is "highly disfavored" under New York law.  (*Id.* at 12-13.)

### 2. Plaintiff's Opposition Memorandum of Law

As relevant to this Decision and Order, Plaintiff argues that it has sufficiently pled facts to pierce the corporate veil and hold Langevin and Clement personally liable for Nomad's wrongdoing.  (Dkt. No. 39, at 7-9 [Pl.'s Opp'n Mem. of Law].)  Specifically, the pleading standard under Fed. R. Civ. P. 12(b)(6) is the "appears beyond doubt that the plaintiff can prove no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957).  (*Id.* at 7.)  Moreover, Plaintiff argues that the Complaint alleges that Langevin and Clement had complete dominance over Nomad for the relevant transaction because they were the only two members of the LLC, they conducted the negotiations with Plaintiff, and Langevin signed the contract.  (*Id.* at 8.)  Finally, Plaintiff argues that the Complaint alleges that Plaintiff paid money to Nomad, which Langevin and Clement used to pay off personal debts rather than perform the contracted work, and that such action constitutes a wrongful use of their domination of Nomad.  (*Id.* at 8-9.)

### 3. Defendants' Reply Memorandum of Law

As relevant to this Decision and Order, Defendants argue that, at its core, Plaintiff's response argues that the corporate veil should be pierced because Nomad's sole members were Langevin and Clement.  (Dkt. No. 41, Attach. 2, at 7-11 [Defs.' Reply Mem. of Law].)  More specifically, Defendants argue that the Complaint contains no factual allegations plausibly suggesting that Langevin and Clement exercised any more control over Nomad than that which

4

would be expected in any closely held, member-operated limited liability company.  (*Id.*)

Moreover, Defendants argue that using money from the contract with Plaintiff to pay tax debts

owed to New York State was not a misuse of Nomad's funds for personal purposes because the

tax debts were Nomad's debts, not the personal debts of Langevin or Clement.  (*Id.* at 9-10.)

Similarly, Defendants argue that Plaintiff has not alleged facts plausibly suggesting any of the

six factors related to showing fraud under the heightened pleading standard for fraud-based

claims.  (*Id.*)  Finally, Defendants argue that, under New York law, piercing the corporate veil

does not constitute a cause of action independent of the cause of action against the corporate

entity.  (*Id.*)

## II.     GENERAL LEGAL STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical

to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of*

*Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).  It has long been understood

that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R.

Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency

of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the

claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008)

(McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

5

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2]  *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is

## III. ANALYSIS

After carefully considering the question of whether Plaintiff's Third Claim should be dismissed, the Court answers that question in the affirmative for the reasons stated in Defendants' memoranda of law, though the Court finds that such dismissal should be without prejudice. (Dkt. No. 32, Attach. 1, at 9-10, 12-13 [Defs.' Mem. of Law]; Dkt. No. 41, Attach. 2, at 9-11 [Defs.' Reply Mem. of Law].) To the relevant reasons stated in Defendants' memoranda of law, the Court adds the following analysis.[3]

---

not incorporated by reference, the court may nerveless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[3] Plaintiff does not argue that Washington law should apply to this action for determining whether it is appropriate to pierce the corporate veil. (Dkt. No. 39, at 7-9 [Pl.'s Opp'n Mem. of Law].) Notably, Plaintiff cites to Second Circuit cases that apply New York law when stating its understanding of the applicable legal standard and therefore appears to concede that New York law is appropriate. (*Id.* at 7.) Notwithstanding, the Court would nonetheless apply New York law even if the parties disagreed (and an actual conflict were present between New York and Washington law) because the center of gravity in this case is in New York; although Plaintiff is a Washington entity, Defendant Nomad is a New York entity, Defendants Langevin and Clement were living and conducting business in New York before being refused re-entry to the United States, and the work that is the subject of the contract was to be performed in New York. (Dkt. No. 1, Attach. 2, at 2-3.) *See also Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 583 (2d Cir. 2006) (listing factors to be considered as including "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties"). Though not determinative, the parties additionally agreed in the contract that the contract would be governed

9

"'Broadly speaking, the courts will disregard the corporate form . . . whenever necessary to prevent fraud or to achieve equality.'" *Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191 (N.Y. 2018) (quoting *Morris v. Dep't. of Taxation*, 623 N.E.2d 1157 [N.Y. 1993]). "Properly understood, 'an attempt . . . to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather, it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners.'" *Cortlandt St. Recovery Corp.*, 96 N.E.3d at 203. "[A] plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Id.*

While "allegations concerning the 'domination element' of the two-part test are subject to the 'basic pleading standard of [Fed. R. Civ. P.] 8,'" "allegations concerning the defendant's fraudulent acts 'are subject to the heightened pleading standard of [Fed. R. Civ. P.] 9(b) to the extent that they allege fraud.'" *Ningbo Prods. Imp. & Exp. Co., Ltd. v. Eliau*, 11-CV-0650, 2011 WL 5142756, at *6 (S.D.N.Y. Oct. 31, 2011) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 [2d Cir. 1991]). "'[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability' under either pleading standard." *Ningbo Prods. Imp. & Exp. Co.*, 2011 WL 5142756, at *6.

Courts have considered the following factors, among others, as being relevant to determining whether an individual has used his or her dominance to abuse the corporate form: (1) failure to adhere to corporate formalities; (2) inadequate capitalization; (3) commingling of

---

by and construed in accordance with New York State law. (*Id*. at 5.)

assets; and (4) the personal use of corporate funds.  *Olivieri Constr. Corp. v. WN Weaver St., LLC*, 41 N.Y.S.3d 59, 61 (App. Div. 2d Dep't 2016); *see also Koninklijke Philips Elecs. N.V. v. The ADS Group*, 694 F. Supp. 2d 246, 251-52 (S.D.N.Y. 2010) (quoting *Wm. Passalacqua Builders, Inc.*, 933 F.2d at 139) (outlining the factors broadly applicable to corporations).

> A. **Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Langevin and Clement Exercised Complete Domination of Nomad with Respect to the Transaction Attacked**

In its opposition memorandum of law, Plaintiff relies heavily on the fact that the Complaint alleged that Langevin and Clement solicited Nomad's written agreement with Plaintiff, and that Langevin executed that agreement on behalf of Nomad.  (Dkt. No. 39, at 8 [attaching page "6" of Pl.'s Opp'n Mem. of Law].)  With regard to that narrow argument, the Court takes no issue.  (Dkt. No. 1, at ¶¶ 17-20 [Pl.'s Compl.]; Dkt. No. 1, Attach. 2.)

However, in a breach-of-transaction action (such as here), the "transaction attacked" is not merely the agreement to perform (i.e., Nomad's agreement to renovate and customize Plaintiff's Airstream trailer), but the *failure* to perform (i.e., Nomad's failure to perform on that agreement).[4]  Here, the alleged failure to perform the agreement consisted of an alleged two-pronged failure: (1) Nomad's alleged failure (during the six-week period of May 13, 2016, to August 5, 2016) to perform under the agreement or reasonably progress on the renovation and customization of the trailer (despite making seven bi-weekly withdrawals of progress payments

---

[4] *See, e.g., Network Enters. v. Reality Racing Inc.*, 09-CV-4664, 2010 WL 3529237, at *5 (S.D.N.Y. Aug. 24, 2010) ("With respect to the domination inquiry, Plaintiff must allege facts that plausibly suggest Defendants dominated Reality Racing when the company executed *and then breached* the Agreement and the July Agreement.") (emphasis added).  This makes sense given that the piercing of a corporate veil is not an independent claim but merely a doctrine sought to be applied to another claim (here, Plaintiff's First Claim for *breach* of contract and its Second Claim for *breach* of warranty).

11

from Plaintiff's bank account during that time period), and (2) Nomad's alleged failure (on or after August 4, 2016) to either deliver the trailer in completed condition or return the $150,000 paid by Plaintiff. (Dkt. No. 1, at ¶¶ 30-33, 37-38, 44-59 [Pl.'s Compl.].) As a result, the question is whether Plaintiff's Complaint has alleged facts plausibly suggesting that Langevin and Clement exercised complete domination of Nomad in respect to those two failures.

The Court has learned through the parties' motion papers that a third employee of Nomad existed during the time period in question (Luis Edward Marin, a consultant), suggesting that it may have been that third party (and/or another employee) who controlled the work (or lack thereof) on the Airstream trailer. However, the Court cannot consider the fact of that third employee's existence on the current motion, because it was presented outside the four corners of the Complaint and no exception to the four-corner rule applies. *See, supra*, Part II of this Decision and Order. Rather, any argument that it was Mr. Marin (and/or some other employee) who caused the two failures in question is more appropriately evaluated on a motion for summary judgment.

After carefully considering the matter, and liberally construing the factual allegations of the Complaint,[5] the Court finds that Plaintiff has (albeit barely) alleged facts plausibly suggesting that Langevin and Clement, who were owners and operators of Nomad, controlled the work (or lack thereof) on the Airstream trailer. (Dkt. No. 1, at ¶¶ 9, 12 [Pl.'s Comp.].) At the very least, Plaintiff has alleged facts plausibly suggesting that Langevin and Clement, who were officers of Nomad with the authority to solicit and enter into contracts on behalf of Nomad, possessed the authority to return Plaintiff's $150,000 upon Nomad's alleged failure to perform on or after August 4, 2016. (*Id.* at ¶¶ 9, 12, 17-18, 21.)

---

[5] The Court notes that all complaints (not just civil rights complaints) must be liberally construed. Fed. R. Civ. P. 8(e).

12

### B. Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Langevin and Clement Used Such Domination to Commit Fraud or Wrongdoing Against Plaintiff (Resulting in Injury)

In its opposition memorandum of law, Plaintiff argues that the Complaint alleges that Langevin and Clement used their domination over Nomad to commit two forms of fraud or wrongdoing against Plaintiff: (1) they regularly withdrew funds from Plaintiff's bank account as progress payments for the work done on the Airstream trailer knowing that no such work was being performed on the trailer, and (2) they used the funds paid by Plaintiff to pay off their personal debts (including New York State sales tax owed by each individual) rather than for work on the Airstream trailer. (Dkt. No. 39, at 8-9 [attaching pages "6" and "7" of Pl.'s Opp'n Mem. of Law].)

With regard to the first form of alleged fraud or wrongdoing, by Plaintiff's own admission, the parties' written agreement expressly permitted Nomad to make the withdrawals. (Dkt. No. 1, at ¶¶ 29, 31 [Pl.'s Compl.]; Dkt. No. 1, Attach. 2, at Section1.4.) Granted, the Complaint alleges that the withdrawals "were intended to be progress payments" (thus implying that Nomad's making of the withdrawals was conditioned on services already performed by Nomad). (Dkt. No. 1, at ¶ 30 [Pl.'s Compl.].) However, such an allegation of intent is rendered implausible by four facts: (1) the fact that the Complaint also twice alleges that the withdrawals were "installment payments" that followed an initial down payment (plausibly suggesting that they were intended to constitute periodic payments to an installment sale);[6] (2) the fact that, consistent with the first fact, the agreement itself (attached to the Complaint) identifies the

---

[6] An "installment payment" is "[o]ne of a serious of periodic payments made under an installment plan. See installment sale." *Black's Law Dictionary* at 1244 (9th ed. 2009). An "installment sale" is a "conditional sale in which the buyer makes a down payment followed by periodic payments and the seller retains title or a security interest until all payments have been received." *Id*. at 868.

13

withdrawals as merely "bi-weekly payments," each of which consisted of one-seventh of the remaining balance owed by Plaintiff following the payment of a deposit; (3) the fact that, consistent with the first and second facts, the Complaint also alleges that Nomad retained title to the Airstream trailer until August 4, 2016; and (4) the fact that conspicuously omitted from Plaintiff's Complaint is any factual allegation plausibly suggesting by whom the intent was possessed, how the intent was expressed, and when the intent was mutually shared. (Dkt. No. 1, at ¶¶ 21, 23, 27-30 [Pl.'s Compl.]; Dkt. No. 1, Attach. 2, at Section 1.4.)

Granted also, Plaintiff alleges that (1) no work was actually performed on the Airstream trailer before August 4, 2016, and (2) Langevin and Clement represented to Plaintiff that Nomad was performing such work. (Dkt. No. 1, at ¶¶ 32-33 [Pl.'s Compl.].) However, the first allegation is difficult to square with the factual allegation that the Airstream trailer was never delivered to Plaintiff after August 5, 2016, given that, without seeing the trailer, Plaintiff would have no personal knowledge as to whether Defendants had performed any work on the trailer. (*Id.* at ¶ 37.) More important, the second allegation (which is one of fraud and thus must be particular pursuant to Fed. R. Civ. P. 9[b]) is so bereft of dates, individuals, means of communication and/or statements as to be conclusory. (*Id.* at ¶ 32.)

For all of these reasons, the Court finds that Plaintiff's Complaint does not allege facts plausibly suggesting that Langevin and Clement used their presumed domination of Nomad to commit fraud related to taking payment from Plaintiff while allegedly performing no work on the Airstream trailer.

With regard to the second form of alleged fraud or wrongdoing, this argument contains three assumptions: (a) that the Complaint alleges facts plausibly suggesting that the funds paid by Plaintiff had to be used by Nomad to pay for work on the Airstream trailer; (b) that the

Complaint alleges facts plausibly suggesting that the funds paid by Plaintiff were not used by Nomad to pay for work on the Airstream trailer; and (c) the Complaint alleges facts plausibly suggesting that the funds paid by Plaintiff were used by Langenvin and Clement to pay off their "personal debts." (Dkt. No. 1, at ¶¶ 30-31, 33, 37-38, 42 [Pl.'s Compl.].)

With regard to the first assumption, as the Court has explained above, the funds paid by Plaintiff were (based on the Complaint's factual allegations) not progress payments but installment payments. As a result, the corporate funds could be used for any of Nomad's corporate purposes. Certainly, Nomad could have chosen to use other corporate funds to work on the Airstream trailer.

With regard to the second assumption, based on the *facts* alleged, the payments from Plaintiff could have been used to pay for work on the Airstream trailer in part, in its entirety, or not at all. Plaintiff has no idea. Plaintiff merely assumes that, because the Airstream trailer was not delivered by August 5, 2016 (and because Nomad owed state taxes from 2012 and 2013 as of March 4, 2015), no funds must have been spent towards work on it between April 23, 2016, and August 5, 2016. (Dkt. No. 1, at ¶ 37 [Pl.'s Compl.].) This is precisely why Plaintiff's allegations of misuse of corporate funds are made "upon information and belief." (*Id.* at ¶¶ 41-43.)[7]

---

[7] In response to any argument that Plaintiffs' "upon information and belief" pleading suffices under the Second Circuit's reasoning in *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), the Court rejects the notion that the facts in question are *peculiarly* within the possession and control of Defendants Langevin and Clement. Setting aside the fact that (due to their removal from the United States) Langevin and Clement do not to appear any longer have access to many of the facts in question, those facts would also appear to be available from the following (rather common) sources: (1) a former employee of Nomad (i.e., Luis Edward Marin), (2) any other former employees of Nomad (who are referenced in paragraph 4 of Mr. Marin's declaration), (3) the subcontractors and/or suppliers used by Nomad for work on trailers (and possibly Nomad's payroll company), and/or (4) a physical inspection of the Airstream trailer in question. The Court also rejects the notion that Plaintiff's belief is based on

With regard to the third assumption, although Plaintiff's opposition memorandum of law argues that the Complaint alleges that Langevin and Clement used funds paid by Plaintiff to pay off personal debts (including New York State sales tax owed by each individual), the Complaint does not actually allege that Langevin and Clement used Plaintiff's payments to pay "personal debts." To the contrary, the only "debts" alleged by Plaintiff in the Complaint are those that were owed to creditors by Defendant *Nomad*. (Dkt. No. 1, at ¶¶ 40, 42 [Pl.'s Compl.].) Similarly, the Complaint does not actually allege that Langevin and Clement personally owed state sales taxes. Rather, the Complaint expressly alleges that Langevin and Clement had a "history" of using Nomad's assets for personal uses rather than "paying debts or monies owed to creditors by Defendant Nomad," which included failure to pay New York State sales tax (plausibly suggesting that the sales taxes were owed by Nomad). (*Id.* at ¶ 42.) Indeed, if the Court were to consider the New York State Department of Taxation and Finance press release provided by Plaintiff with its opposition memorandum of law (as incorporated by reference in, or integral to, this allegation), the Court would find that the document tends, if anything, to plausibly suggest that the sales taxes in question were owed by Nomad due to deficiencies in its quarterly sales tax returns from 2012 to 2013. (Dkt. No. 37, Attach. 3.)

More importantly, any allegation that Langevin and Clement used the payments from Plaintiff either for their own personal use or to pay Nomad's tax debts rather than pay for work on the Airstream trailer is completely speculative. Based on the above-described press release,

---

factual information that makes the inference of culpability plausible. The only factual information possessed by Plaintiff is that (1) it paid the funds, (2) the Airstream trailer was not delivered by August 5, 2016, and (3) as of March 4, 2015, Nomad owed state taxes from 2012 and 2013. The assumptions that need to be made to connect these dots are so numerous and tenuous as to render the inference of culpability merely possible, not sufficiently reliable (and thus not plausible).

Nomad's tax debts were declared due before March 4, 2015, more than a year before Nomad entered into a written agreement with Plaintiff on April 22, 2016, by which time they could have been paid in part, or in their entirety, or not at all. Again, Plaintiff merely speculates that the tax debts were not paid by April 22, 2016, and that Langevin and Clement used Plaintiff's funds to pay those debts after April 22, 2016.

For all of these reasons, the Court finds that Plaintiff's Complaint does not allege facts plausibly suggesting that Langevin and Clement used their presumed domination of Nomad to commit wrongdoing.

However, because it is conceivable to the Court that Plaintiff already possesses (or can obtain through discovery) the facts necessary to allege grounds to pierce the corporate veil, the Court will dismiss Plaintiff's Third Claim only without prejudice. Plaintiff is advised, however, that, should it move for leave to amend its Complaint to re-assert its entitlement to this doctrine, the Court agrees with Defendants that the doctrine does not properly constitute an independent cause of action under New York law. *See, e.g., Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (N.Y. 1993) ("The concept [of piercing the corporate veil] is equitable in nature and assumes that the corporation itself is liable for the obligation sought to be imposed. Thus, an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners."); *DiMauro v. United, LLC*, 122 A.D.3d 568, 569 (N.Y. App. Div., 2d Dept. 2014) ("New York does not recognize a separate cause of action to pierce the corporate veil."); *ARB Upstate Comm'ns LLC v. R.J. Reuter, L.L.C.*, 93 A.D.3d 929, 931 (N.Y. App. Div., 3d Dept. 2012) ("Piercing the corporate veil is not a separate cause of action . . . ."); *9 East 38th St. Assocs., L.P. v. George*

17

*Feher Assocs., Inc.*, 640 N.Y.S.2d 520, 521 (N.Y. App. Div., 1st Dept. 1996) ("[Under New York law], "a separate cause of action to pierce the corporate veil does not exist independent from the claims asserted against the corporation.").

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 32) is **GRANTED**, and Plaintiff's Third Claim is **DISMISSED** without prejudice.

Dated: June 25, 2018
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge